The next case on calendar for argument is Neal v. City of Bainbridge Island. Good morning, counsel. Counsel for appellate, please approach and proceed. I request that the court reverse the rulings of the district court below and remand for limited discovery and trial my First Amendment retaliation claim, my defamation claim, emotional distress claim, and the Public Records Act claim. I'd like to focus on the First Amendment retaliation claim. The district court applied a recent decision of this court, the Lathis v. Huntington Beach case that came down in 2023. I'd like to start with the effect of that ruling based on my facts. Now, all committee members who are appointed by a council and can be removed by a council, city council, share the same fate as Lathis did in Lathis v. Huntington Beach. They don't have any First Amendment right against retaliation for their speech any longer on those committees, even though they weren't appointed by a particular council member as Lathis was. So suddenly, we're all the public face of the city council. It doesn't matter, evidently, that there was no one-to-one relationship with, as in Lathis, where a council member appointed a particular person to represent her on this board and communicate to the public. Evidently, it is of no moment that the committee, the steering committee that I was on, was not a direct conduit between the public and the council as the board was in Lathis. On my committee that I was on, the steering committee, there was an intermediary, the planning commission. And if you look at the code that authorized the steering committee, it makes very clear that the steering committee creates a report and then it goes to the planning commission, not once, not twice, but three times. And then the planning commission makes revisions and so forth and sends that on to the council. So it's the planning commission that has the relationship with the council. Council, why does any of that matter? I mean, isn't it a fundamental part of the First Amendment jurisprudence that governments can regulate the speech of their employees? And as a committee woman, weren't you effectively an employee? I was not effectively an employee. I was a volunteer and we were told we were actually officers of a sub-agency land use committee. And I would direct the court to... All of that's under the rubric of the city, correct? It is. I would direct you to the decision of this court, Highland v. Wunder. They're two decisions. And in that case, they pointed out that the volunteers still have First Amendment rights, despite the fact that they're volunteers. Now I understand... Didn't we hold in Sullivan that volunteers also can be held under the Garcetti precedent that their speech is restricted? I missed the first... Sullivan v. University of Washington? The Sullivan case is something of a red herring. If you read the decision, the issue was whether their applications could be disclosed. And they said they had an associational right under the First Amendment not to have people know who they were associated with. It doesn't really apply here. Now if... What are the limits of this though? I mean, if the city council has a committee that says, you know, we're on a committee that's going to beautify the parks of the city of Bainbridge, and somebody is on the committee and decides, you know, I don't like that objective. I'm going to... I don't want to beautify the parks. I want to do everything I can to stop that. Wouldn't the city have the ability to say, you're kind of not going with the goals that we have? We were elected by the people to do this. And would they not have... I mean, you could call that a First Amendment objection too, but would they not have the ability to displace that person? That would be an interesting question. That's not what happened in my case. But I think it is important... But is it not somewhat analogous to what happened in your case, where the city has decided that you're not representing the best interests of the city and they've made that judgment? Well, what happened in my case is that I raised issues of conflicts of interest on the committee and was removed two months after I notified the council and the public about these conflicts of interest. That's what happened in my case. The council, weren't you told that those should go to the Ethics Commission instead of being aired as part of this subcommittee? And so, continuing to bring this into that form was disruptive. Were you made aware of that? The comment that you're referring to was one of the council members, when he received the email about the conflicts, he emailed me back and said, you could submit an ethics complaint. I would submit that the horse was kind of out of the barn at that point. No one told me before that to issue an ethics complaint. I requested... Did you submit an ethics complaint? I eventually did after advocating for a couple of years for them to fully disclose conflicts of interest when the board or when the committee had their final motion and voted on the report and the two people with the conflicts of interest voted to increase the zoning on their property. I then submitted an ethics complaint. So just timeline-wise, you did not bring your conflicts issue internally first before you publicized it and emailed it out to that list? Well, I wouldn't characterize it that way because if you look at my declaration, which is at 2 ER 103, I think, and then it goes on, I talked to the committee repeatedly about the ethics program and how we needed to disclose conflicts of interest. I talked to the council liaison and asked her for assistance. I actually spoke to the city attorney and he told me, no one's exempt from the ethics program, but I don't advise on the ethics program because that's a council thing. That's not a law. So I took it... Did you raise it to the councilwoman, I think, in charge of your committee? I did. And then to the council that were actually at that conflict first? I raised it to the council liaison, yes, and she ignored it.  So I... Just why as a theoretical matter, would the principle of lathis be limited to the situation in which a council person has a specific representative on the committee? That may make it more obvious that there's no First Amendment problem, but why does that mean there is a First Amendment problem in your case? When you read the lathis case, it appears to me that it was the direct relationship between the two parties because the court discussed many times the fact that the public could assume that whatever the person on the board said in public was something that the council person agreed with because, hey, she put this person on the board. And in my case, we don't have that. We had a generalized, you know, they approve these appointees in a big list. The council votes on it, and we're off to the races. And I want to return and remind the court that our code, unlike the lathis code, specifically said that we were appointed to represent a wide spectrum of interests. We were not appointed to represent the interests or thoughts or beliefs of the council because this was a land-use committee. I assume that's why they wrote it this way. So you would concede, though, if you were a paid committee woman, then you would have no free speech rights, correct? As an employee of the city of Bainbridge. Well, employees have free speech rights. Not when they're talking about subjects within their employment. Even when they're talking about the subject of their employment, there are cases such as Highland v. Wunder. Garcetti talks about this and discusses the fact that if there's a completely internal – if it's your work product that you're doing for the company and you're communicating – or the government – and you're communicating with your superiors about that work product, then there might not be a First Amendment right because that's really the employment relationship. But once the person who's employed goes outside that sphere, and if they are talking about a matter of public concern, such as conflicts of interest, then they do have First Amendment rights, even if they're an employee. But if they do it in such a way that it disrupts the working relationships, then there's no First Amendment protection. Is that correct? Yes. And I go back to the Highland v. Wunder case, which I think is very instructive about the disruption. It's sort of a sliding scale. What is the speech about? If it's about conflicts of interest, if it's about corruption – which it wasn't in my case, of course – then the amount of disruption that has to be allowed is much higher. And I believe it was that court that even pointed out that if you're pointing out a problem with the other people that you're working with that's an ethical problem, that's going to cause disruption. It's going to cause hard feelings. But we can't shut that down. And that's the heartburn I have with applying Lathis to my situation, is now it seems that even governmental malfeasance cannot be spoken of without risk of retaliation, either removal from the committee or any retaliation for the First Amendment rights. I had wanted to reserve five minutes. Does the court have more questions on this? It appears not. Thank you, Counsel. Thank you. Good morning. May it please the Court. My name is Janie Freeman. I represent the City of Bainbridge Island, who was the defendant below in this case and is the respondent here, along with Kari Lester, who is in the courtroom as well. The district court properly found that commonality of political purpose was a reasonable expectation of volunteers that the City Council here appointed to a planning advisory committee that was established by the City Council to gather feedback from their local constituents and to provide recommendations regarding development of a subarea, this was an Island Center subarea, within the City of Bainbridge Island. Now, the court so far has addressed a couple of different ways to analyze plaintiff's First Amendment claim here, and I think first you were discussing how the claim would be analyzed if she was akin to an employee. The plaintiff herself has distanced herself from being considered an employee. She was not an employee in this case, whether paid or unpaid, she was not in a position that was in the nature of an employee or even employee-type volunteer. She also was not an elected official. When you say, when you make the point that she wasn't an employee, are you then, do you draw from that that she would have even less rights than an employee? Under the Lathis, yes, under the Lathis doctrine, which I think should control this case. The reason we went down the line and also discussed is sort of an even if Lathis didn't apply, then we would go look at how courts have analyzed the limitation on First Amendment rights of, for example, employees who do not have a- Because you raised the Garcetti in your brief, but it seems like you're backing out from it now. No, no, no, I'm not backing out from it. As a defendant in this case, I've responded to the claims that the plaintiff has made, and initially the plaintiff was arguing that she was like an employee. She was like an unpaid employee. And so those are, even if you found the Lathis doctrine didn't apply, those arguments still do apply. And the questions that you had about whether it's an employee speaking within the course of their job, like in Garcetti, the city does have, would have some authority to regulate the speech of their employees when they're speaking on their behalf. In this case, the Lathis- Wait, are you saying she's like an employee or not? I am not saying she's like an employee. I'm saying in the past she argued she was like an employee. But if you're saying she's not like an employee, then how does Garcetti apply? I'm just, I'm saying, so again, Lathis controls the day here. But if, if for example, Lathis, the Lathis decision came out in the middle of this litigation. And so we were responding to, and even if the court today decided Lathis didn't apply, for example, if we followed Ms. Neal's arguments, she still would not prevail under those standards. Under standards if she called herself an employee, under standards if she called herself some sort of an official. She's not like an employee. She's serving on a committee discussing public government benefits and functions. Correct. So this is, what's different about this case and distinguishes her from an employee or an elected official is this is a situation where the city of Bainbridge Island, by its own legislative code, established its own process as to how it wanted to govern and develop land use processes. The city, the city council has authority to do that. And in order to understand how Lathis applies here, and Ms. Neal tried to distinguish Lathis from this situation because in Lathis, a single council member both appointed and removed a volunteer on an advisory committee, much like we have here. In that case, the city code in that particular case was different than the Bainbridge Island city code. And the same with the Gloria versus Hodges case where you saw a mayor veto reappointment of a similar volunteer to an advisory committee. The reason why the doctrine still applies here is our form of government in the city of Bainbridge Island. The city of Bainbridge Island has chosen to be governed by a council manager form of government, which is different than the government, than like a strong mayor form of government where the mayor has the last say or a council mayor form of government, which we saw in the Hodges v. Gloria case where the city council made decisions, but that mayor retained authority to veto. Under the council manager form of government, only the seven elected city council members have authority to make decisions binding on the city. And they can only do it by majority vote. No one council member can just make a decision on their own like the code provided for in the Hodges v. Gloria case. That was a different thing. How was Ms. Neal appointed to the advisory committee? Ms. Neal was appointed by vote of the city council. Recommendation of the mayor had to be confirmed by the city council. And those, the processes for creating this committee, how volunteers are appointed and removed and their tasks that they are given by the city council are all developed by the local municipal code that was adopted legislatively by the Bainbridge Island City Council. So the city council could have decided to write their code a different way. The city council could have put more restrictions on the way they appointed volunteers, the nature of their duties, etc. But they didn't. So that's why I thought the Garcetti line of precedent is just more straightforward. If she's like an employee, the city can regulate her speech. I just don't know why you're not embracing that more now. It's not that I don't get... Because you don't have to go through all this rigmarole about the procedures of how you hire and fire people. I think, number one, because I think Lathis more directly controls the decision here. But even as an appointed volunteer on a committee, the Garcetti doctrine would still apply because she has been tasked with particular duties and tasks by the city council. And the city council still does have authority to dictate how it's done. And if they don't like the way that she's doing it, they can govern what her communications to the public on their behalf. And in this case... Can they do that, though, in retaliation if she's pointing out improprieties? Does she have a First Amendment right to point out improprieties without being relieved of her duties? So again, number one, under the Lathis doctrine, yes, she does not have First Amendment protection if she is a political appointee, which she is here. And I can go further on that. Under the Garcetti doctrine that you're discussing, though, what was made clear in Garcetti is when an employee is speaking within their role. For example, here Ms. Neal was acting as a council member. And what she claims that she was retaliated for was speech during meetings while she was working as a volunteer committee member. And second, some emails that she sent out from her city committee email reporting on the work of the council. And so yes, under Garcetti, the city council does have authority to still regulate that type of speech because it's being done in the course and scope of a position they appointed her to. But I understand your point on Lathis is that if you're in the Garcetti world, you're trying to evaluate, is this really within the scope of this person's official duties or not? And maybe we would say yes, or maybe we would say no, because reporting on ethical violations, alleged ethical violations, is really not part of her official duties that should be subject to Pickering. But with Lathis, you don't have to get into any of that. And you can just say she's essentially a political appointee, and we are the representatives of the people of the city of Bainbridge Island, and we can fire somebody for any reason under our code. And that's what we did. Exactly. And Lathis specifically said to go to your question, Your Honor, is that there is no First Amendment protection for that. So it sort of is before we even get to these other analyses. There is not First Amendment protection. The city council who established the existence of the committee, established and approves appointees to the committee, solely has authority to remove appointees from the committee. The city council has to approve the committee's work plan once they start on it. The city council has tasked this particular committee to interface with their constituents. And in this regard, some of the arguments Ms. Neal made really has it backwards. She has argued that once she was on the committee, her interfacing with the public was a duty that she had to certain people in the public. I would disagree with that. Her duty was to interface with the public on behalf of those elected officials that that public chose to represent them. The public is the constituents of the council, not of Ms. Neal. And the council has, again, by their own code created, and they are authorized to do so, sole authority for the council to appoint and to remove and to ask these volunteers to act on their behalf. And they can decide at any point without cause whether or not they would like a certain committee member to continue. That's further confirmed when we look at the city's governance code that is a resolution adopted by the city that kind of collects together some of its basic principles that appear in its code. And that document also establishes that advisory committees like the Sub-Island Committee are, first of all, they're advisory, they're temporary, and they are temporarily created by the city council for a specific person, or sorry, a specific purpose. Only the city council can decide who's on it, who's not on it, what they do. What's interesting is that there's also a clause in that particular document that notes that when new council members are elected, if this advisory committee, such as the Sub-Island Committee, is doing its temporary work while new council members are elected, they are authorized to review who's on the committee and if they still agree that the people on the committee are the ones that they want or the work is going the way that they want it. Which further confirms that this is a political appointment, was designed to be that way. Not in the political sense of whether someone's a certain party or not, but that local governments are authorized to manage their own local affairs by representative government. Here, because we have the council manager form of government, that means the majority of the elected officials, the elected council members, make those decisions. Why was Ms. Neal discharged? There was a vote. There was a motion to release her from the committee. There was some discussion and there was a vote. We don't know the motives of each of the five people who voted to discharge her. Again, as a defendant, we are responding to Ms. Neal's arguments. Ms. Neal has argued she believes that she was terminated or removed from the committee because of certain specific statements that she says she argues are protected by the First Amendment. I'm just taking each of those arguments in turn and addressing whether or not a cause of action exists. A cause of action simply doesn't exist under the First Amendment for her removal from this committee, regardless of why any one of the five council members may have voted to remove her. I'm happy to address any further questions that you have or if you would like me to address any of the ... Obviously, we are also requesting that the court affirm dismissal of Ms. Neal's tort claims filed under Washington law and her Public Records Act claim, which I think are very clearly briefed in the briefs. If you don't have further questions, then, Your Honor, thank you for your time. Thank you, counsel. Roboto? Thank you. I'm not really sure where we are on the employee-volunteer issue, but when I read ... Again, I keep bringing up Highland View Wonder, but it was a good case, I thought. These theories are not really designed to require you to put someone in a box. These theories are designed to balance the interests of an employer or a government with a volunteer against the First Amendment rights of the volunteer. That's the way I've been seeing it. What case are you relying upon to inform your view as to how that works? Which case is most helpful to you in your view? I think Highland View Wonder is one of the most helpful. There are two decisions, Highland View Wonder 1 and 2, because it went back for a trial and then came back up. It's a volunteer that was involved. The memo that was written was about issues that arose during the volunteer position, but it was about a problem that this person saw with the workings of what was happening. I won't go into a lot of factual detail. That was a memo that arose out of what the person was doing as a volunteer. When the person was unable to get any traction with the people he spoke with about it, he went over their heads and went to, I think, a chief judge or something like that. The Ninth Circuit said that even though that arose out of his job, it wasn't his job to do that. That's the same situation I have. I wasn't there to do ethics reports to anyone, the public or the council. That's what really concerns me about applying Lathis so blanketly to anyone who's appointed. If Lathis does apply to your case, do you concede that you would lose? Yes. Okay. Yes. Okay. Yes. That's why I'm here, because I do think it's very important. You have to describe why being accountable to a single member is different than being accountable to the entire board and why we should draw a constitutional distinction. I think that it's a number of things that came out of Lathis. It was the direct relationship, because the court was plainly ... I listened to the oral argument as well. The court was plainly struck with the notion that you could appoint someone who then went out to a protest and did something that you would never do, and suddenly you're associated with that person. That was really, it seemed to me, from the oral argument anyway, something that the court really latched onto. You need the direct relationship with the person that has appointed the person. Preferably, you'd have a code that actually has a removal procedure, which the steering committee code does not. In that case, I think the employee went to an Antifa rally. If you went to an Antifa rally, why wouldn't that look poorly on the entire committee here? I've thought about that. This is the balancing issue. I have to keep coming back to my facts at some point, is that if someone ... As a volunteer, I've got no whistleblower protections under state law. I didn't point that out in the briefing, but it's irrelevant really. The point is that now these volunteers have no protections for even conflicts of interest or even corruption statements made to the public. They can be retaliated against. I want to make ... Although no one's stopping them from raising these points. You've been able to raise these points, obviously in your capacity as a, I would say, political representative while you were there, but you've continued to be able to do that. It's not as though anyone's speech is being silenced. The question is just, do you have the right to make the speech as somebody who's being retained by the city council for this role? Yes. I don't want to overstate that. You're correct. I'm not saying that my speech was silenced by this, but it was retaliation, and First Amendment retaliation is important. We don't allow it for a reason because it silences other people. It chills speech. The other way you could have got at that is that you could limit lathice in some way. Even if it does apply, the speech you're allowed to retaliate is limited to certain types of speech like attending Antifa rallies. I think that that is something that I would like to see, however the court decides, is something describing exactly what lathice means, because right now it means retaliation. It's a free-for-all. Right. Thank you. All right. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BRESS, BUMATAY